ORIGINAL

FILED IN THE UNITED STATES DISTRICT COURT DISTRICT OF HAWAII AUG 6 2003 at __ o'clock and __ min. __ M. WALTER A. Y. H. CHINN, CLERK

EDWARD H. KUBO, JR.   2499
United States Attorney
District of Hawaii

MARK J. MELLETT
Special Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii   96850-6100
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Mark.Mellett@usdoj.gov

Attorneys for Defendant
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD L. OBREY, JR., <br><br> Plaintiff, <br><br> vs. <br><br> HANSFORD T. JOHNSON, IN HIS CAPACITY AS ACTING SECRETARY OF THE NAVY, <br><br> Defendant. | CIVIL NO. 02-00033 HG LEK <br><br> NOTICE OF MOTION; DEFENDANT'S MOTION FOR DIRECTED VERDICT; MEMORANDUM IN SUPPORT OF MOTION FOR DIRECTED VERDICT; EXHIBIT A; CERTIFICATE OF SERVICE <br><br> DATE: August 6, 2003 <br> TIME: 9:30 am <br><br> JUDGE: Manuel L. Real |

## DEFENDANT'S MOTION FOR DIRECTED VERDICT

Comes now defendant Hansford T. Johnson, through his counsel, and hereby moves this Honorable Court for a directed verdict against the Plaintiff. This Motion in Limine is made pursuant to Fed. R. Civ. Pro. 50(a) and is supported by the

attached memorandum.

DATED: August 6, 2003, in Honolulu, Hawaii.

                              EDWARD H. KUBO, JR.
                              United States Attorney
                              District of Hawaii

                          By _____
                              MARK J. MELLETT
                              Sp. Assistant U.S. Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD L. OBREY, JR., ) | CIVIL NO. 02-00033 HG LEK |
| Plaintiff, ) | MEMORANDUM IN SUPPORT OF |
| ) | DEFENDANT'S MOTION FOR |
| vs. ) | DIRECTED VERDICT |
| HANSFORD T. JOHNSON, IN HIS ) | |
| CAPACITY AS ACTING SECRETARY ) | |
| OF THE NAVY, ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR DIRECTED VERDICT**

COMES NOW Federal Defendant Hansford T. Johnson, Secretary of the Navy, and files this Motion for Directed Verdict pursuant to Fed. R. of Civ. P. 50(a).

**I. BACKGROUND**

Plaintiff alleges that Defendant violated his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII").

Plaintiff's Second Amended Complaint contains three claims of discrimination:

First Claim:  Race claim related to his non-selection in December 2000 for the Production Resource Manager position;

Third Claim:  Race claim related to his non-selection in July 2001 for the same position as alleged in his First Claim.

Fourth Claim:  Retaliation claim related to his removal as Program Manager in July 2002.

In Plaintiff's complaint and case-in-chief, the following

2

facts were established:

### 1. Facts Relating to First Claim

1. Plaintiff submitted his resume for the Production Resource Manager position in August 2000.

2. Defendant considered his resume in the selection process in late 2000.

3. Defendant selected a Caucasian, Ernest Chamberlin, in October 2000 and that Mr. Chamberlin declined the position.

4. Defendant then selected a Caucasian, David Reilly, in February 2001 and that he declined.

5. The selection process took place again in July 2001.

6. Plaintiff's resume was in the files of the Human Resources Servicing Center to be again considered for the position in July 2001.

7. David Reilly was again selected in July 2001.

### 2. Facts Relating to Second Claim

1. Plaintiff admitted that the his job as Project Superintendent was essentially different from the duties of a Production Resource Manager.

2. From 1995 to 2001, Plaintiff, as Project Superintendent, managed specific repairs on individual ships.

3. From 1995 to 2001, he managed, on average, only up to 150 people.

4. His last work on nuclear vessels was in 1990.

   5.   The Production Resource Manager position, on the other hand, was responsible for training approximately 2,500 personnel at the shipyard.

   6.   The Production Resource Manager provided skilled labor, materials and equipment to all of the individual repair projects.

   7.   The Production Resource Manager trained workers in nuclear work.

   8.   The Production Resource Manager was an important position in the shipyard.

   9.   Plaintiff received a notice that he was "eligible" to be considered for the Production Resource Manager position in October 27, 2000. (Exhibit 18).

   10.  The notice expired on or about January 27, 2001. (Exhibit 18).

3.   **Facts Relating to the Third Claim**

   1.   Plaintiff filed a discrimination complaint in March 2001 relating to his non-selection for the Production Resource Manager position. (Complaint at 31 - attached hereto as Exhibit "A").

   2.   Plaintiff was a Project Superintendent in July 2002 and had extra duties as Program Manager.

   3.   His responsibilities as Program Manager involved day to day scheduling of work on the USS CHOSIN.

   4.   Plaintiff got sick and was absent for 3 weeks.

   5.   He was relieved as Program Manager while he was out sick.

6. Captain Iverson, his supervisor, told him that he was relieved because of his concerns for Plaintiff's health and that he might have a relapse.

7. Plaintiff suffered no economic loss nor was he reduced in employment grade by his relief from certain duties.

8. Plaintiff retained his title as Project Superintendent.

## II. LAW

Fed. R. of Civ. P. 50(a) provides, in pertinent part,

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable find on that issue.

The United States Court of Appeals for the Ninth Circuit has provided a standard that the plaintiff must meet in order to make his prima facie case in a suit involving a claim of failure to hire under Title VII:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualification.

Gay v. Waiters and Dairy Lunchmen's Union 694 F.2d 531, 538 n5 (9th Cir. 1982).

The Ninth Circuit has stated that the role of the prima facie case is that:

5

> it presents the legal question whether the plaintiff has met his burden of production, coming forward with sufficient probative evidence to permit a rational jury, or court, to find the material facts in his favor, thus avoiding a directed verdict or motion for judgement as a matter of law. A prima facie case of intentional discrimination is established if the plaintiff proves facts "from which one can infer, if such actions remained unexplained, that it is more likely than not" that the defendant's conduct was racially motivated. As an inference, it can but need not result in an ultimate judgement for the plaintiff. In other words, a prima facie case under McDonnell Douglas is one in which the plaintiff has met his immediate burden of production, but not necessarily his ultimate burden of persuasion.

694 F.2d at 545 (citations omitted).

There is a two step analysis of the prima facie case. The first step is to look if plaintiff has met the elements. The second step,

> a more difficult one, is a legal inquiry: are these facts sufficient to support an inference of intentional discrimination? By its very nature, therefore this second inquiry involves the legal consequences attendant to the proof of certain basic or subsidiary facts, i.e. the legal sufficiency of the evidence. The question whether the plaintiff has established a prima facie case is a question addressed to the district court not in its role a factfinder, but in its role as legal decisionmaker. The court must decide, at the close of the plaintiff's case-in-chief or otherwise, whether the plaintiff's evidence is legally sufficient to shift the judgement as a matter of law, without regard to whatever proof he has, or may, offer in rebuttal.

Id. at 546

### III. ANALYSIS

#### 1. First Claim (Non-Selection in December 2000)

Plaintiff has failed to prove that he was "rejected" for the position in December 2000. Therefore, his First Claim must be

dismissed due to a lack of legally sufficient evidence on which a reasonable jury could find for Plaintiff.

The First Claim is based on Plaintiff's non-selection in December 2000. There was no successful selection in December 2000. Thus, the vacancy remained open. Plaintiff admitted on the stand that the resume he submitted in August 2000 for the Production Resource Manager position remained under consideration through December 2000 to the time when a new selection was made in July 2001. Even though he was not selected in December 2000, he was not "rejected", as is required under his prima facie case. Gay, 694 F.2d at 538 n5. His resume remained on record to be considered. Thus, judgement as a matter of law is appropriate.

### 2. Third Claim (Non-Selection in July 2001)

Plaintiff has failed to establish that he was "qualified" for the position of Production Resource Manager in his prima facie case. Gay, 694 F.2d at 538 n5. Therefore, his Third Claim must be dismissed for a lack of legally sufficient evidence from which a reasonable jury could give a verdict to the Plaintiff.

Plaintiff admitted that his job as Project Superintendent was essentially different from that of the Program Resource Manager. He worked on specific small projects, with limited personnel. The Production Resource Manager, on the other hand, managed thousands of personnel and supplied labor, materials and equipment to all of the individual projects. Plaintiff admitted Exhibit 18, a notice of Plaintiff's eligible status to be

considered for the Production Resource Manager position. However, what "eligible" means is unexplained. Plaintiff offered no evidence on whether that means that he was considered "qualified" or not. Significantly, the notice expired in January 2001, seven (7) months before the third and final recruitment was made in this case. There is no evidence in the record from which a reasonable jury could find that Plaintiff was qualified. Therefore, a directed verdict on Plaintiff's Third Claim is required. <u>Gay</u>, 694 F.2d at 538 n5

### 3. Fourth Claim (Retaliation)

Plaintiff has failed to provide legally sufficient evidence from which a reasonable jury could find that the Defendant retaliated against him for filing a discrimination complaint. Therefore, the claim must be dismissed.

To establish a claim of retaliation, the Plaintiff must establish that (i) a protected disclosure was made, (ii) retaliation resulted in the form of adverse employment action, and (iii) there was a causal link between the retaliation and petitioner's removal. <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 891 (9th Cir. 1994). The only evidence that Plaintiff has introduced is the temporal proximity of his filing a discrimination complaint in March 2001 and his relief from duties as Program Manager in July 2002.

The United States Supreme Court has observed that the cases which have examined whether a temporal proximity is enough to

8

establish a casual connection such that retaliation can be inferred, have uniformly held that the temporal proximity must be "very close". <u>Clark Count School Dist. v. Breeden</u>, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed 2d 509 (2001).

A three month separation in time is insufficient to establish a causal connection. <u>O'Neal v. Ferguson Constr., Co.</u>, 237 F.3d 1248, 1253 (10th Cir. 2001) and <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d 205, 209 (10th Cir. 1997).

A four month separation in time is insufficient to establish a casual connection. <u>Hughes v. Derwinski</u>, 967 F.2d 1168, 1174-75 (7th Cir. 1992).

Here we have a sixteen (16) month separation between the protected activity and the alleged retaliation. Plaintiff filed his discrimination complaint in March 2001. He was relieved of his duties due to his ill health in July 2002. There is no temporal proximity of the events. No causality is suggested at all. Thus, Plaintiff's Fourth Claim is legally insufficient for a reasonable jury to find for Plaintiff on this claim. It must be dismissed on directed verdict.

## IV.  CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that the Court enter a directed verdict on all of Plaintiff's remaining claims.

DATED: August 6, 2003, at Honolulu, Hawaii.

          EDWARD H. KUBO, JR.
          United States Attorney
          District of Hawaii

By _____
   MARK J. MELLETT
   Sp. Assistant U.S. Attorney

F.   **Exhaustion of Administrative Remedies**

31.   On or about January 11, 2001, Plaintiff contacted the EEO Counselor concerning his non-selection to the GS-15 and GS-14 Positions in December 2000. Plaintiff filed his formal complaint of discrimination on March 21, 2001. In his formal complaint, Plaintiff alleged that his non-selection to the GS-15 Position constituted unlawful discrimination based on his race and national origin. Moreover, Plaintiff alleged that his non-selection to the GS-14 Position constituted unlawful discrimination based on his age.

32.   On March 22, 2001, the Agency acknowledged receipt of Plaintiff's March 21, 2001 complaint in DON 01-32253-014.

33.   On June 29, 2001, the Agency issued its Notice of Acceptance and Dismissal of DON 01-32253-014 ("Notice"). The Agency accepted his claim concerning the GS-14 Position for investigation, but dismissed his claim concerning the GS-15 Position under 29 C.F.R. § 1614.107(a)(5). The Notice advised that Plaintiff had no immediate right to appeal the dismissed portion of the complaint until the agency completed processing the accepted claim.

34.   An investigation as to Plaintiff's GS-14 claim was conducted between October 2 to November 1, 2001. On December 5, 2001, the Agency issued its Transmission of Investigative File for DON 01-32253-014. The transmittal letter that was attached to the Investigative File advised Plaintiff of his right to a final decision by Defendant or a hearing and decision by an EEO Administrative Judge.

35.   On December 20, 2001, Plaintiff requested from the Navy a final agency decision relating to his formal administrative complaint filed on March 21, 2001. To date, no final agency decision has been issued. As 180 days has passed since Plaintiff filed his formal discrimination complaint, Plaintiff hereby files his initial Complaint pursuant to 29 C.F.R. § 1614.407(b).

EX. A