# EXHIBIT "G"

1

1          IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF HAWAII

3
                         )
    RONALD L. OBREY, JR.,    )  CV 02-00033 MLR-LEK
4                      )
          Plaintiff,   )  Honolulu, Hawaii
5     vs.              )  June 1, 2005
                      )  8:45 A.M.
6   HANSFORD T. JOHNSON, etc.,  )
                      )  Status Conference
7         Defendant.   )  Regarding Expert
      _____)  Witnesses

8

9            TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MANUEL L. REAL
10         UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiff:      CLAYTON C. IKEI, ESQ.
                        Commerce Twr.
13                      1440 Kapiolani Blvd, Ste 1203
                        Honolulu, HI 96814
14
    For the Government:     THOMAS HELPER, ESQ.
15                      EDRIC CHING, ESQ.
                        Office of the U.S. Attorney
16                      PJKK Federal Bldg.
                        300 Ala Moana Blvd. Ste. 6100
17                      Honolulu, HI 96850

18   Official Court Reporter:   Debra Kekuna Chun, RPR, CRR
                      United States District Court
19                      300 Ala Moana Blvd. Ste. C285
                      Honolulu, HI 96850
20                      (808) 534-0667

21

22

23

24   Proceedings recorded by machine shorthand, transcript
    produced with computer-aided transcription (CAT).
25

**EXHIBIT "G"**

2

```
 1    WEDNESDAY, JUNE 1,  2005              8:45 O'CLOCKA.M.

 2              THE CLERK:  Civil Number 02-00033 MLR, Ronald L.

 3    Obrey, Jr., versus Hansford T. Johnson, et al.  This case

 4    is called for hearing Number 1:  Status Conference

 5    Regarding Expert Witnesses.

 6              CHAMBERS SECRETARY:  Counsel, make your

 7    appearances, please.

 8              MR. IKEI:  Good morning.  Clayton Ikei,

 9    representing Ron Obrey, plaintiff.

10              MR. CHING:  Good morning, Your Honor.  Assistant

11    United States Attorneys Edric Ching and Thomas Helper,

12    representing the defendant the Department of the Navy.

13              THE COURT:  All right.  We'll take up the

14    plaintiff's motion to strike the expert offered by

15    defendant.  I'll hear you.

16              MR. IKEI:  Yes, Your Honor.  We submitted our

17    motion on May 18th.  May 17th we received a disclosure by

18    the defendant's expert.  We have nothing further to add to

19    our motion and memo.  Basically, Judge Gillmor's order

20    dated April 24, 2003, ordered that -- and it was by

21    stipulation and approved by Judge Gillmor -- that

22    defendants had up to, and including, April 17 -- I'm

23    sorry.  June 17th, 2003, to file their expert disclosure,

24    which they failed to do so and they did not do so until

25    almost two years later after the remand had been ordered.
```

3

1    In fact, it was dated May 17, 2005.  And, one, it violates

2    the order of Judge Gillmor, and, more importantly, it

3    violates Rule 16.

4          THE COURT:  All right.

5          MR. HELPER:  Your Honor, this is Tom Helper.

6    I'm arguing this part of the motion or this motion for

7    defendant.  And, you know, I don't have a whole lot to add

8    to our brief either.  We raised this matter with the court

9    in plaintiff's counsel's presence back in April when we

10   were setting the trial date.  We made clear our intention

11   to get an expert witness, the court indicated that there

12   was time enough to do that, plaintiff's counsel didn't

13   object, and we provided the data as soon as -- or the

14   report as soon as we got the complete disclosure from

15   Mr. Ikei's expert, including all the electronic data.  So

16   I think we've acted diligently and promptly, gotten the

17   court's permission, and it would be only fair to allow the

18   jury to hear both sides of the statistical evidence --

19   statistical case here.

20         MR. IKEI:  Your Honor, I would object to Mr. --

21   we cooperated with Mr. Helper, but at no time did we state

22   that we would not raise the objection we are now raising.

23         MR. HELPER:  No, that's true.

24         THE COURT:  Just a moment.  Didn't -- wasn't the

25   discovery date extended?

1           MR. IKEI:  Not that I'm aware of, Your Honor.

2     Although, the discovery -- they have taken depositions but

3     because Your Honor is in Los Angeles we felt it imprudent

4     to file motions for protective order because I don't know

5     who would hear it.

6           THE COURT:  Well, I believe it's fair, if the

7     plaintiff is going to offer statistical evidence, that the

8     defendant should also be able to do that.  And the fact

9     that it was -- that the plaintiff's expert was excluded,

10    certainly there would be no reason for the defendant on

11    that basis to offer any statistical evidence in rebuttal.

12    Now there appears to be, but we'll take up that just

13    momentarily because -- and so the motion to exclude

14    Mr. Skoog or Dr. Skoog, or whatever his name is, is

15    denied.

16          But, Mr. Ikei, I do want to take up the question

17    of the competency of Mr. Dannemiller to opine on the

18    statistics since at least it appears that he didn't follow

19    what statisticians usually follow in terms of making a

20    determination of the makeup of the matters that are

21    involved in this case; so his methodology under Dauber

22    might be questionable.  I'll hear you.

23          MR. IKEI:  Well, we have discussed this matter

24    with Mr. Dannemiller, and he did, in fact, follow the

25    usual practices that are followed by statisticians.  And

5

1   it is his conclusion that Mr. Skoog's opinion is

2   misrepresenting and making conclusions -- assumptions,

3   erroneous assumptions, about his methodology.

4   Mr. Dannemiller, obviously, is not here to discuss

5   procedures he used but would be able --.

6            THE COURT:  -- his report that he's going to

7   testify to.  One of the things he's not going to testify

8   to is his, quote, conclusion that as a result of his

9   statistics that there was discrimination since he hasn't

10  taken into account all of the matters that were doing

11  that, and it's for the jury to make that determination as

12  to whether or not there was discrimination based upon the

13  statistics as they are presented to them --

14           MR. IKEI:  But he --

15           THE COURT:  -- not the conclusion of what the

16  statistics show.

17           MR. IKEI:  Your Honor, I think Your Honor is --

18  I think that Your Honor -- the Ninth Circuit made it clear

19  that Mr. Dannemiller's opinion and report is admissible

20  and it is for the -- and any objections the defense may

21  have go to the weight and not the admissibility.

22           THE COURT:  They didn't say that his opinion

23  that there was discrimination is admissible.

24           MR. IKEI:  I believe they did, Your Honor.

25           THE COURT:  No, I don't think so.  There's

6

1    nothing in the opinion that indicates that.

2          MR. IKEI:  They recite his opinion, and they say

3    that that opinion is admissible.

4          THE COURT:  On the statistics.  But that's not a

5    statistical matter.  And it is for the jury to make the

6    determination as to whether the statistics, which he is

7    expert in, means discrimination.  That's at least my

8    understanding of the law.

9          MR. IKEI:  I think he can state his opinion, and

10    the jury is free to decide whether to accept that opinion.

11          THE COURT:  No.  I don't think -- it's for the

12    jury to determine based upon the statistics.  I don't

13    think, quote, his opinion of discrimination is one which

14    is admissible because it's a jury determination.  He may

15    give the statistics as he found them, and that's generally

16    what statisticians do.  They don't opine upon the question

17    that's before the jury.

18          MR. IKEI:  The court is saying, basically, that

19    he may only give his statistics but he may not render what

20    all experts are permitted to do, and that is to state

21    their opinion as to what those statistics mean.

22          THE COURT:  No.  He's offered as a statistician.

23    That means he's calculating the statistics.  He's not

24    offered as an expert on, quote, discrimination.

25          MR. IKEI:  He is offered as an expert qualified

1    to give an opinion about discrimination, and that was the

2    proffer that was made at the previous trial.

3            THE COURT:  Well, he's not qualified -- you've

4    given me no qualifications that he has to opine on, quote,

5    discrimination.  You offered him as a statistician --

6            MR. IKEI:  The court is misreading our motion,

7    Your Honor.

8            THE COURT:  -- to give the statistics.  Okay?

9    That will be the ruling on at least Mr. Dannemiller.

10           MR. IKEI:  May I state our objection because it

11   seems to me that --

12           THE COURT:  And Dr. Skoog will not be able to

13   give an opinion either on the question of whether or not

14   the statistics as he calculated them amounts to

15   discrimination.  All right?

16           Now, with reference to these three witnesses,

17   that has still been left to me to make a determination.

18   And I believe that the matter can be -- first of all, as

19   they stand in your trial brief, Mr. Ikei, it does not

20   represent what the circumstances were in each of those

21   cases as to what the pool was, what their position was in

22   terms of the pool, who the makeup of the ones who were

23   making the recommendations, and the makeup of the rest of

24   this.  They were not -- they certainly were not -- the

25   question was not -- were for very different jobs, as I

1    understand it, and the qualifications of the people who

2    were involved in the matter; so they are mini trials,

3    which will take too long to make those -- to make that

4    determination.

5           I have suggested that the possibility would be

6    that I would let you, if it's cleaned up so that there are

7    no opinions and no problems with it and it is fully -- it

8    is fully taken, that you rewrite what you call the

9    evidence of other discriminatory promotions and that we

10   read that to the jury as evidence of those -- of what they

11   would testify to as an alternate to taking the time to try

12   three cases -- three more cases.

13          MR. CHING:  Your Honor, this is Assistant United

14   States Attorney Edric Ching.

15          THE COURT:  Yes.

16          MR. CHING:  If we do go along with that option,

17   the defendant requests that evidence of the administrative

18   rulings against these three witnesses also be admitted --

19          THE COURT:  Yes.

20          MR. CHING:  -- and presented to the jury.

21          THE COURT:  Yes.

22          MR. IKEI:  Your Honor, I would -- it seems that

23   Your Honor is not complying with the mandate of the Ninth

24   Circuit, and we would ask leave of court to file a writ of

25   mandamus because it is clear that nothing's changed as far

9

1    as Your Honor's --

2         THE COURT:  No.  We're going to trial because

3    the opinion indicates very clearly that the district court

4    will retain discretion to decide that the witness' claims

5    so overwhelm the issues in the trial that their testimony

6    must be excluded under Rule 403.

7         MR. IKEI:  The sentence before that states the

8    kind of considerations under 403 that is normally used to

9    exclude does not apply in this case.

10        THE COURT:  No.  It doesn't say that.  The

11   sentence before that says, "On balance we believe that

12   this proposed testimony was likely to be relevant, and

13   Rule 403 considerations do not warrant exclusion in this

14   case.  Consequently, we find that the district court

15   abused its discretion when it excluded the testimony.  On

16   remand the district court, of course, will retain

17   discretion to decide that the witnesses' claims so

18   overwhelm the issues in the trial that their testimony

19   must be excluded under Rule 403."

20        MR. IKEI:  But I don't believe that what Your

21   Honor has in front of him would justify a finding that the

22   testimony offered -- to be offered live by these witnesses

23   would be so overwhelming that it would warrant an

24   exclusion, as Your Honor has suggested.

25        THE COURT:  Well, in each case you have to get

10

```
 1    all of the evidence with reference to the pool, all of
 2    the -- it's exactly what Mr. Obrey would be presenting and
 3    what the defense would be presenting in Mr. Obrey's case.
 4    You have to go through that entire matter as to what was
 5    presented to the panel, who it was who was making the
 6    decision, all of these matters.  That's three trials.
 7              MR. IKEI:  That is not three trials.
 8              THE COURT:  Well, it is three trials because for
 9    each one -- for each one we have to make the determination
10    that there was, quote, discrimination.
11              MR. IKEI:  It seems to me that Your Honor is
12    engaging in trying to shortcut our presentation of the
13    evidence, and I want to point out that in the Teamsters
14    case that is the Supreme Court case, the Supreme Court
15    noted that there were 49 anecdotal evidence presented, and
16    we're only asking for three.
17              THE COURT:  That case is nothing like this.
18    Please.  That case is nothing like this.
19              MR. IKEI:  We believe it is not to the scope of
20    it, but it is a like Teamsters case where we have alleged
21    a pattern and practice, as has been made clear by the
22    Ninth Circuit opinion and made clear that Your Honor
23    abused the discretion in precluding us from offering
24    evidence of a pattern and practice.
25              THE COURT:  They left the discretion to me
```

11

1   still, Counsel. That is very clear. That is very clear,

2   that language. So I have suggested to you how the matter

3   can be avoided, and we can have an efficient trial.

4           MR. HELPER: Your Honor, Tom Helper. Just

5   procedurally it is the court's expectation that Mr. Ikei

6   would draft something, and we would try and work out some

7   kind of agreement on a stipulation with --

8           THE COURT: Yes. Yes. As to how to present

9   that evidence, the totality of the evidence.

10          MR. IKEI: And if there's disagreement, then the

11   court will decide and --

12          THE COURT: That's right.

13          MR. IKEI: And I would suggest that this court

14   is not totally unbiased in its rulings in terms of my

15   client's ability to prove his entire case.

16          THE COURT: All right, Mr. Ikei. You have your

17   own opinion, and I make the rulings. And that's the

18   suggestion that I make to you because I feel that it would

19   be three trials, which is too long, and I've suggested a

20   way to obviate that problem and have an efficient trial

21   here for Mr. Obrey and to allow him then to present that

22   kind of evidence that he wants to present from these three

23   people. And it will not take the question of questions

24   and answers and cross-examination and questions and

25   answers and cross-examination that will take four or five

12

1   days to try.

2           MR. IKEI:  And I believe that Your Honor is more

3   concerned with shortening this trial than giving my client

4   a fair trial.

5           THE COURT:  No, not at all.  Not at all.  I'm

6   giving you an alternative to be able for you to present

7   the evidence you want to present so that it will be

8   efficient.

9           MR. IKEI:  Well, for the record I disagree.

10          THE COURT:  All right.  Well, you rewrite these

11  Mr. Kawachi and --

12          MR. IKEI:  Your Honor, we have depositions

13  scheduled for these three individuals.

14          THE COURT:  What?

15          MR. IKEI:  In light of this court's ruling,

16  which I still object to, ask Your Honor issue an order

17  that those three depositions not go forward because I

18  don't see any need for us to waste our time.

19          THE COURT:  No.  If you make -- if you make just

20  as you did in your trial memo and put in the matters which

21  the government would cross-examine on or present in terms

22  of how these were handled, then I think -- because you

23  don't make a determination as to how it was handled, just

24  that somebody -- they lost and somebody else was

25  appointed.

13

1            MR. IKEI:  But Your Honor is making --

2            THE COURT:  The process is not -- that doesn't

3    necessarily prove discrimination.

4            MR. IKEI:  Your Honor is taking away from the

5    jury the ability to decide whether these individuals lost

6    on the basis of race or because of qualification.

7            THE COURT:  No.  I'm giving them the opportunity

8    to do that.  I'm giving them the opportunity to do that by

9    this question as to how I've proposed to you as to how you

10   could get it in evidence.  Okay?

11           MR. IKEI:  By the fact that Your Honor is going

12   to make an ultimate ruling as to what we can present Your

13   Honor is deciding for the jury what -- the question that

14   they must answer.  You're taking that away from them

15   because --

16           THE COURT:  No, I'm not taking it away from

17   them.  I'm giving you the opportunity to do that in that

18   form so that it can be efficient for the jury to make a

19   determination.

20           MR. IKEI:  And how is the jury to make a

21   determination when they can't decide on the credibility of

22   witnesses who are not present in front of them?

23           THE COURT:  Well, because that's the

24   determination they have to make as to what that is.  They

25   can't make a different determination.  They don't have to

14

1    make a determination of credibility.  They have to make a

2    determination of what's presented to them.

3              MR. IKEI:  I believe the anecdotal evidence is

4    clear that a jury is required as part of their function to

5    make a determination as to credibility.

6              THE COURT:  Mr. Ikei, I tell you how to do it.

7    I've made you -- I've suggested to you the situation as to

8    how that evidence can come in.  Now -- and the opinion

9    indicates that there could be some other way that the

10   evidence could come in, and I'm suggesting that to you,

11   according to the opinion of the Court of Appeals in Obrey

12   versus the U.S. Navy.  Okay?

13             MR. IKEI:  And I would object because the jury

14   is -- you're taking away the ability of the jury to make a

15   determination on credibility.

16             THE COURT:  Well, the jury gives -- the Court of

17   Appeals gives me an opportunity to suggest to you how it

18   could come in so that it will not take three trials --

19   three full trials.

20             MR. IKEI:  It will not take -- the offer that we

21   will be making through these witnesses will not take --

22   will not be three mini trials.

23             THE COURT:  That offer is not sufficient because

24   it doesn't tell the story.  Okay?

25             MR. IKEI:  I disagree.  It tells the story.  It

15

1    only tells --

2                 THE COURT:  Well, that's your opinion.  I've

3    read your trial brief, and it does not tell the story in

4    that form.  Okay?  Now, if you want to give me a full

5    offer of proof, then we'll look at that.

6                 MR. IKEI:  And Your Honor has indicated that the

7    government has their opportunity to make a full offer and

8    you will decide --

9                 THE COURT:  No.  The offer will be together.  It

10   will be one statement of those cases.

11                MR. IKEI:  But Your Honor will be the decider as

12   to what is offered; therefore, Your Honor is deciding

13   credibility.

14                THE COURT:  Oh, no.  I'm not -- no.  I'm giving

15   you the opportunity to give it to me to see whether or not

16   it's relevant and it is something that should be and

17   provides for the question that will not take undue time.

18   That's what I'm deciding.  I'm not deciding anything about

19   what testimony's going to be.  Your trial brief indicates

20   that.  But it doesn't fully cover it.  That's all.  I just

21   want it fully covered.

22                MR. IKEI:  Your Honor --

23                THE COURT:  And maybe what we can do is we can

24   have -- and you can fax to me and we can have a hearing on

25   Friday as to the alternate possibility.  Okay?

16

1          MR. CHING:  Your Honor, this is Edric Ching.

2    Are you proposing that Mr. Ikei submit a draft to us and

3    we make comments on it and try to agree as much as

4    possible as to the --

5          THE COURT:  That would be one alternative.  You

6    could do it together on what happened to these people.

7          MR. IKEI:  I don't think because of the

8    contested matter that we could agree to an agreed

9    statement of facts.

10          THE COURT:  Well, you might be able to,

11   Mr. Ikei.  Try it.  Just try it.

12          MR. CHING:  Your Honor, this is Edric Ching.  I

13   will prepare on our side a statement of facts and fax it

14   over to Mr. Ikei perhaps by noontime tomorrow?

15          THE COURT:  And Friday we'll have a hearing.

16          MR. CHING:  Okay.

17          THE COURT:  Okay?

18          MR. CHING:  Okay.

19          THE COURT:  Same time.

20          MR. CHING:  Okay.  Your Honor?

21          THE COURT:  Yes.

22          MR. CHING:  Is this a good time to address other

23   issues that going to happen at trial?

24          THE COURT:  Certainly.  Absolutely.

25          MR. CHING:  Your Honor, one thing I would like

1    to request permission is for the Navy's representative to

2    sit at our counsel table.  He is retired Captain Jonathan

3    Edwards from the Navy.  I would like to ask permission for

4    him to sit at counsel table at this time.

5         THE COURT:  Any problem, Mr. Ikei?

6         MR. IKEI:  Not with that.  That was at the last

7    trial.

8         THE COURT:  All right.

9         MR. CHING:  Another issue, Your Honor, is that

10   during my opening statement I intend to use a form of

11   PowerPoint and Sanction.  And I would be happy to inform

12   Mr. Ikei what we intend to put on the screen as long as

13   he's going to do the same; he will extend us the same

14   courtesy.

15        MR. IKEI:  We've always done that with the

16   government, Your Honor.

17        THE COURT:  All right.

18        MR. CHING:  And the other thing, Your Honor, is

19   that --

20        THE COURT:  But no argument.  The opening

21   statements are not arguments.  It's not to argue the

22   case.

23        MR. CHING:  Yes.

24        THE COURT:  Okay.  All right.  Go ahead.

25        MR. CHING:  Your Honor, one of our other

1    witnesses his name is Robert Matsumoto.  He had a stroke a

2    couple years ago, and he is still undergoing speech

3    therapy.  So sometimes he takes a little bit longer to

4    answer questions, and sometimes he gets a little tired

5    when answering questions.  So I would just ask the court's

6    patience and indulgence with him.  We may have to ask for

7    maybe a little bit more frequent breaks with him because I

8    think, when he goes about 20 minutes, half an hour, he

9    does get tired.

10         THE COURT:  He shouldn't have to take longer

11    than that.  All right.

12         MR. CHING:  The other thing I want to point out,

13    Your Honor -- we have discussed this with Mr. Ikei -- is

14    we have a witness named Tetsu Omaye.  He is a nuclear

15    submarine senior management at the Pearl Harbor Naval

16    Shipyard.  They are currently undergoing a very important

17    nuclear sub audit, and he is available on Wednesday

18    morning.  We have spoken to Mr. Ikei, and he has agreed

19    that, if Mr. Ikei's case is still going on during

20    Wednesday morning, that he would allow us to take Mr. Omai

21    out of order.  And we would like to ask the court's

22    permission at this point for that.

23         THE COURT:  All right.

24         Anything else?

25         MR. CHING:  Your Honor, Edric Ching again.  Your

19

1    Honor, Mr. Helper and I will be doing -- we are splitting

2    the witness load, and, if you'd like, we will put it in

3    writing prior to the trial as to which witnesses each of

4    us will be handling.

5              THE COURT:  All right.

6              MR. CHING:  I think that's all, Your Honor.

7              THE COURT:  All right.  Then we'll see you on

8    the 6th.

9              MR. IKEI:  Your Honor, in light of this court's

10   ruling to which we objected to, may I ask that this court

11   order that the depositions scheduled for this morning not

12   go forward.

13             MR. CHING:  That's fine, Your Honor.  This is

14   Edric Ching.  We're in agreement with Mr. Ikei as to that

15   issue.

16             THE COURT:  All right.

17             MR. CHING:  That's without prejudice, Your

18   Honor.  If it -- later on we can't work something out, we

19   reserve the right to take the depositions in the future.

20             THE COURT:  That will be the order.

21             All right.  Then we'll see you -- talk to you on

22   Friday same time.

23             MR. IKEI:  8:45 A.M. Hawai'i time.

24             THE COURT:  Yes.  Thank you.

25             MR. IKEI:  Thank you, Your Honor.

20

1            MR. CHING:  Thank you, Your Honor.

2        (Court recessed at 9:15 A.M.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21

1                    COURT REPORTER'S CERTIFICATE

2              I, Debra Kekuna Chun, Official Court Reporter,

3     United States District Court, District of Hawaii, do

4     hereby certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled

6     matter.

7              DATED at Honolulu, Hawaii, June 1, 2005.

8

9                                    _____

10                                   DEBRA KEKUNA CHUN

11                                   RPR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25