EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii

THOMAS A. HELPER  5676
EDRIC M. CHING  6697
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii 96850-6100
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
E-mail: tom.helper@usdoj.gov
E-mail: edric.ching@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RONALD L. OBREY, JR., | ) | CIVIL NO. 02-00033 LEK |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S FINAL PRETRIAL |
| | ) | STATEMENT; CERTIFICATE OF |
| vs. | ) | SERVICE |
| | ) | |
| DONALD C. WINTER, Secretary of | ) | |
| the Navy, | ) | DATE:    September 2, 2008 |
| | ) | TIME:    9:00 a.m. |
| Defendant. | ) | JUDGE:  LESLIE E. KOBAYASHI |
| | ) | |
| | ) | |
| | ) | |

DEFENDANT'S FINAL PRETRIAL STATEMENT

Comes now Defendant DONALD C. WINTER ("Defendant"), by and through its undersigned counsel, and hereby submits his Pretrial Statement pursuant to Rule 16.6, Local Rules of the United States District Court for the District of Hawaii.

(a)  PARTY

This pretrial statement is submitted on behalf of Defendant.

(b)    <u>JURISDICTION</u>

Defendant agrees that this Court has jurisdiction over this Title VII matter and that venue rests in the district.

(c)    <u>SUBSTANCE OF ACTION</u>

This case arises out of the non-selection of Plaintiff to the Shipyard Production Manager, GS-1601-15, position at the Pearl Harbor Naval Shipyard ("Shipyard") which was filled in July 2001 by David Reilly, an individual who previously held the same position at another Naval Shipyard.  His qualifications were clearly superior to Plaintiff.  When he applied for the Production Resource Manager position, Plaintiff held a position of Project Superintendent, GS-14, in the Operations Department at the Shipyard.

1.    <u>Role of the Shipyard</u>

The Shipyard is responsible for maintaining the Pacific Fleet.  The Shipyard performs both intermediate and depot-level maintenance for ships and submarines.  In 2001, 90% of the work at the Shipyard consisted of submarine work while 10% consisted of ship work.  The trend at the Shipyard in 2001 was toward increasing submarine work.  Substandard work performed on ships and submarines would prevent the Pacific Fleet from completing its mission, the defense of the nation, and endanger the lives of the sailors on board.  Shipyard employs over 4,000 civilian personnel.

2

2.  <u>GS System</u>

The General Service ("GS") system is the government's classification of the majority of its white-collar employees.  A higher GS grade reflects higher compensation and responsibility. GS-15 is the very highest GS rank and the highest classification which does not require hiring approval outside the Navy.  A GS-15 is equivalent to a Captain in the Navy or a Colonel in the Army.

At the current time, fewer than 20 GS-15 positions and 100 GS-14 positions are based at Shipyard, a small percentage of the Shipyard civilian workforce.  In 2000, Plaintiff was near the top of the supervisory pyramid and sought promotion to the very top of the supervisory pyramid.

3.  <u>Production Resource Manager Position</u>

The Production Resources Manager is one of the most important positions at the Shipyard.  The Production Resource Manager supervises a large percentage of the Shipyard civilian employee workforce, manages a budget in the millions of dollars and has a large role in protecting national security by ensuring that the necessary resources are present to service the Pacific Fleet.  Its duties include:

1.  Obtaining the proper staffing levels by hiring, developing apprentices and/or borrowing employees from other shipyards;

2.  Ensuring that the Shipyard workers have sufficient training;

3.  Adequately staffing each job; and

3

4.   Ensuring that the facilities are operational.

The Production Resource Manager position was one of the most important GS-15 positions due to the number of supervised employees, the large budget controlled by the Production Resource Manager and the importance of maintaining the facilities which serviced the Pacific Fleet.

4.   <u>Qualifications</u>

a.   <u>David Reilly</u>

i.   <u>Education</u>

Mr. Reilly holds a Bachelor's Degree in Electrical Engineering, a Master's Degree in Mechanical Engineering from the Naval Postgraduate School and a Master's Degree in Business Administration from Breneau University.

ii.   <u>Work Experience</u>

Mr. Reilly possessed a broad range of work experience when he applied for the Production Resource Manager position.  From 1989 to 1991, he served as a Repair Officer at the Portsmouth Naval Yard which primarily involved nuclear submarine work in which he was responsible for scheduling and monitoring the work of various trades.  From 1991 to 1994, Mr. Reilly served as the Production Resource Manager - the same position which is the subject of this lawsuit - at the Charleston Naval Shipyard.

From 1994 to 1995, Mr. Reilly served as the Deputy Director of Shipyard Operations for NAVSEA, which involved management of

all four shipyards.  In this position, Mr. Reilly traveled to each shipyard and allowed Mr. Reilly to develop an understanding of the role each shipyard played within the Navy.

From 1996 to 1998, he was the Commanding Officer of the Trident Strategic Missile Facility in which he managed at least 1,300 personnel.  In this position, Mr. Reilly was responsible for handling the repair of the submarines and ensuring the security of the missiles.  Mr. Reilly won a Legion of Merit award for his work at the Trident Strategic Missile Facility.

           b.   <u>Plaintiff</u>

               i.   <u>Education</u>

Plaintiff received his high school diploma in 1969.  He received a certificate from the Hawaii Business College in 1991. Plaintiff does not have a Bachelor's Degree from a four year university.

              ii.  <u>Work Experience</u>

Plaintiff began his career at Shipyard in 1972.  He received periodic promotions and he was employed as a Project Superintendent, GS-14 (since 1995) when he applied for Production Resource Manager position.  Since he held various positions at Shipyard, he possessed knowledge regarding various aspects of the Shipyard.

As a Project Superintendent, Plaintiff was responsible for a particular job on a particular ship.  During his tenure as a

Project Superintendent, Plaintiff, at most, supervised two hundred employees.

     5.    <u>Recruitment for a Production Resources Manager (GS-15)</u>

        a.   <u>Early 2000 - Deputy Production Resource Manager</u>

The Production Resource Manager job vacancy was initially advertised as a Deputy Production Resources Manager in early 2000 pursuant to federal law and Navy regulations. The Pearl Harbor Human Resources Servicing Center ("HRSC") collected resumes submitted by the applicants and four Shipyard employees were included in a certificate of eligible candidates after it was determined that they met the minimum standards. Plaintiff did not apply for the Deputy Production Resource Manager position advertised in early 2000.

On or about July 14, 2000, the recruitment was cancelled due to a strategic decision to revise the position to a permanent civilian replacement for the military incumbent and it was determined that the recruitment pool had not constituted a well rounded pool of qualified candidates.

Captain Jeffrey Conners, as the Shipyard commander, sought to expand the pool of applicants by encouraging applicants from the other Naval shipyards to apply for the position. Possessing knowledge of procedures and techniques used at other shipyards would allow a manager to bring different perspectives to his management ability.

On July 14, 2000, Captain Conners, explained his strategy to attract the most qualified applicants by stating in an e-mail, "Our strategy in staffing senior civilian positions has been trying to broaden the gene pool".  Subsequently, Captain Conners was criticized for his choice of words (which was a well known business term) from his superior, Admiral Nanos.  Captain Conners later explained that his comment was not race based and only sought to describe his intent on obtaining a diverse applicant pool.

      b.   <u>August 2000 - Production Resource Manager</u>

This position was re-advertised on August 22, 2000 with the job title Production Resources Manager to reflect the revision into a permanent civilian GS-15 position.  Plaintiff submitted his resume for the position in late August 2000.

The HRSC used the Delegated Examining Process to rank the candidates.  By this process, the candidates were ranked by Wayne Matsukawa, a supervisor at the HRSC, and Robert Masumoto.  After determining the list of eligible applicants (i.e., being at a GS-14 level for one year), Mr. Matsukawa, aided by Mr. Masumoto, used a "crediting plan" which considered the following factors: 1) Shipyard functions knowledge, 2) ability to plan resources and 3) ability to perform supervisory management functions to compile a list of the top three applicants to forward to the selection panel.  The selection panel would then recommend one applicant to

the selection official to fill the position.  Only the applicants
submitted to the selection panel would be eligible for selection.

Mr. Matsukawa ranked each candidate on a scale of one
(lowest) to four (highest) for each factor.  Mr. Matsukawa
initially assigned Plaintiff a total ranking of "8."  At Mr.
Masumoto's behest, he increased Plaintiff's score for the second
factor (ability to manage resources) by one point and his score
was increased to a "9."  Three applicants were assigned an
aggregate score of "12" while four applicants, including
Plaintiff, were ranked at a "9".

A list of the top three candidates (Earl Donnell,
Jr., Mr. Reilly and Ernest Chamberlin) who were assigned a total
score of "12" were submitted to the selection panel, which
consisted of Robert Masumoto, Tetsu Omaye, David Stock and Robert
Pierce.  The panel recommended Mr. Chamberlin, who was selected
and subsequently declined the position in December 2000.

Mr. Donnell then informed HRSC that he was not interested in
the position.  The vacancy was then re-opened and a list of
certified candidates, consisting of Mr. Reilly, Freeman Correa,
Jr. and Stephen D. Andrews (although Mr. Donnell informed HRSC
that he was not interested in the position, his name was also
included in this certificate) was submitted to the selection
committee.  Plaintiff once again was not included on the list of
certified candidates, which made him ineligible to be selected

for the Production Resource Manager position.  David Reilly, a
Caucasian from the mainland, was then recommended by the panel
and selected by Captain Conners but declined on February 20,
2001.

Captain Conners, scheduled to retire in mid 2001, did not
take further action to allow his successor, Captain John Edwards,
to take further action.

c.   <u>May 2001 – Production Resource Manager</u>

A third recruitment, which included a nationwide
advertisement, was undertaken in May of 2001.  HRSC used a
computer process called RESUMIX to determine who was eligible for
the position.  After advertising the position, HRSC ran the
resumes to match specific "skills" that were vital to the
position.  Each time information on the resume matched a
determined "skill", a "hit" would occur.  HRSC then examined
resumes with a certain number of hits and above and reviewed it
to determine whether the applicant was eligible (in this case, an
eligible applicant needed to be a GS-14 and at the GS-14 level
for one year).

On June 21, 2001, the HRSC certified a list of 10 candidates
on competitive and non-competitive lists, who had the most skill
hits and were eligible for the position.  Plaintiff and Mr.
Reilly were among the ten people submitted to the selection
committee.

9

A selection panel, consisting of Mr. Masumoto, Mr. Omaye, Mr. Pierce and Francis Camelio, was utilized to generate a three person list to be submitted to Captain Edwards.  Equal Employment Opportunity ("EEO") representative Colleen Martineau was present during the deliberations of the selection panel.  Mr. Masumoto and Mr. Omaye are of Asian/Pacific Islander extraction.

The selection panel considered similar factors used in 2000 by Mr. Matsukawa and submitted its top three ranked candidates, Mr. Reilly, Stephen Andrews and Richard Rodrigues to Captain Edwards for his selection.  Plaintiff was ranked approximately fifth out of ten by the panel and his name was not submitted to Captain Edwards.  Captain Edwards, reviewed the resumes of all certified candidates and on the recommendation of the panel, selected Mr. Reilly in August 2001.  Mr. Reilly accepted the position soon thereafter.  At trial, panel members and the selection officer will testify that Mr. Reilly's qualifications were clearly superior to Mr. Obrey and that race played no role in the selection process.

(e)  <u>DISPUTED FACTUAL ISSUES</u>

The parties disagree on the issues of liability, causation and damages.

More specifically, the parties disagree that Plaintiff's non-selection was motivated by race discrimination.  As noted

above, Reilly was clearly more qualified than Mr. Obrey, both in work and educational backgrounds.

Plaintiff will attempt to present circumstantial evidence to establish that Plaintiff's non-selection was motivated by race discrimination.  First, he intends to present testimony of three Shipyard employees who were not selected for senior Shipyard management positions around the same time as Plaintiff's non-selection.  The testimony of these disappointed applicants are not sufficient to establish race discrimination.

For each of the three applicants, their respective applications were reviewed by a selection panel, comprised, in part, by Asian/Pacific Islander senior Shipyard managers, who made recommendations to the selecting officers.  None of the three disappointed applicants were chosen as the top choice by the selection panels and other applicants were selected.  Each of the three disappointed applicants filed administrative Equal Employment Opportunity Act ("EEO") claims and received adverse decisions.  None of the disappointed applicants filed complaints in the United States District Court.

Second Defendant anticipates that Plaintiff will seek to present expert testimony from James Dannemiler regarding his statistical analysis of 160 senior management hiring positions at the Shipyard.  Although over 100 of the individuals hired were nonwhites, Mr. Dannemiller (who does not have a degree in

statistics, and last taught even basic statistics over 20 years
ago) will opine that the statistics show a bias against
nonwhites.  Defendant will file a motion <u>in limine</u> under <u>Daubert</u>
<u>v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993), to show that
most or all of Mr. Dannemiller's opinions violate basic tenets of
statistical analysis.  If some of Mr. Dannemiller's opinions
survive this motion, defendant will present testimony from its
expert, Dr. Gary Skoog, a tenured professor who teaches beginning
and advanced statistics at DePaul University, demonstrating the
flaws in Mr. Dannemiller's opinions.

Third, it is anticipated that Plaintiff will set forth
evidence of Captain Connors' "gene pool" comment.  As noted
above, the "gene pool" comment is a business term used to
describe the preference for a deep, diverse applicant pool.  This
term does not refer to the preference of one racial group over
another in filling management positions.

Fourth, it is anticipated that Plaintiff will set forth the
testimony of Benjamin Toyama, who is a Shipyard union official.
It is anticipated that Mr. Toyama will testify that he overheard
that senior Shipyard management officials make derogatory
comments about the work quality of the Shipyard.

(f)  <u>RELIEF PRAYED</u>

Defendant requests that judgment be entered in favor of
Defendant and against Plaintiff as Defendant has set forth a

legitimate reason for Plaintiff's non-selection, Reilly's superior qualifications, and Plaintiff will not be able to present any evidence to support finding that the legitimate, non-discriminatory reason for the non-selection was pretext.

(g)  <u>POINTS OF LAW</u>

Defendant does not anticipate any novel or unusual points of law in this matter.

(h)  <u>PREVIOUS MOTION</u>

(i)  <u>WITNESSES TO BE CALLED</u>

(ii)  <u>Expert Witnesses</u>

1.  Gary Skoog, Ph.D., Defendant's retained expert, will testify as to his statistical analysis of hiring data at the Pearl Harbor Shipyard and also to the opinions and methodology utilized by Plaintiff's expert, James Danemiller.

A.  <u>Lay Witnesses</u>

1.  Colleen A. Martineau will testify about the selection process of the selection panel for the Production Resources Manager position, GS-1601-15, Code 900 ("Production Resource Manager position").

2.  Tetsu Omaye will testify about his participation on the selection panel for the Production Resource Manager position.  If Frank Pestana or George Tai See are allowed to testify by the Court, Mr. Omaye will testify about his participation on the

selection panel for the Selected Restricted Availability Program Manager, GS-14/15 ("SRA Program Manager") position.

3.    Captain Jeffrey Conners (USN, Ret.) will give background information related to the Production Resource Manager position, testify about the selection process used for the Production Resource Manager position and his involvement in the selection process.  If Frank Pestana or George Tai See are allowed to testify by the Court, Captain Conners will testify about his participation in the selection of the SRA Program Manager position.  If Michael Kawachi is allowed to testify, Captain Conners will testify as to his role as the selecting officer in the selection of the Quality Assurance Director, GS-15 ("Quality Assurance") and the corresponding selection process.

4.    Captain John A. Edwards (USN, retired) will testify as to the selection of David Reilly for the Production Resource Manager position.

If Michael Kawachi is allowed to testify, Captain Edwards will testify as to his role as the selecting officer in the selection of the Supervisory Interdisciplinary Engineer, GS-15 position ("Supervisory Engineer") and the corresponding selection process.

5.    Captain Daniel E. Ries will testify as to the certification process involved in the Production Resource Manager position.

14

6.    Commander Francis J. Camelio will testify about his participation on the selection panel for the Production Resource Manager position.  If Frank Pestana and George Tai See are allowed to testify, Commander Camelio will testify as to his role as the selecting officer for the SRA Program Manager position and the corresponding selection process.

7.    Robert S. Masumoto will testify about his participation on the selection panel for the Production Resource Manager position.  If Michael Kawachi is allowed to testify, Mr. Masumoto will testify as to his role on the selection panel for the Quality Assurance position.

8.    Robert F. Pierce will testify about his participation on the selection panel for the Production Resource Manager position.  If Frank Pestana or George Tai See are allowed to testify by the Court, Mr. Pierce will testify about his participation on the selection panel for the SRA Program Manager position.

9.    David Stock will testify as to his role on the selection panel for the SRA Program Manager position if Frank Pestana and/or George Tai See are allowed to testify.

10.    Melvin Sasaki will testify as to his role on the selection panel for the Quality Assurance position if Mr. Kawachi is allowed by the Court to testify and promotions to senior management position(s) at the Shipyard.

15

11.  Gregory Crowell will testify as to his role on the selection panel for the Quality Assurance position if Mr. Kawachi is allowed by the Court to testify and also regarding his recent selection to a senior management position at the Shipyard.

12. Admiral William R. Klemm will testify to the selection process for the Production Resource Manager position and philosophies of the Navy regarding the hiring of senior managers.

13.  William H. Ryzewic will testify to the selection process for the Production Resource Manager position and the work history of the Pearl Harbor Naval Shipyard.

14.  Admiral G.P. Nanos will testify to the work history of the naval shipyards and to his support for a hiring practice that looked to all naval shipyards to find the most qualified applicant.

15.  Bernard Clark will testify to work history of the naval ship yards and the hiring process used at the Pearl Harbor Naval Shipyard.

16.  Wayne Matsukawa, of the Pearl Harbor Human Resources Servicing Center, will testify to the history of the certification process for the Production Resource Manager position from April 2000 to September 2001, the advertising and certification of the applicants for the Production Resource Manager position, particularly about the ranking of the candidates by his office.

If Frank Pestana, George Tai See and Michael Kawachi are allowed to testify by the Court, Mr. Matsukawa will testify to the history of the certification process for the Quality Assurance and SRA Program Manager positions, the advertising and certification of the applicants for the Quality Assurance and SRA Program Manager positions and particularly about the ranking of the candidates by his office.

17.  Gail Asano, of the Pearl Harbor Human Resources Servicing Center, will testify to the history of the certification process for the Production Resource Manager position from April 2000 to September 2001.

18.  Bernadette Smith, Program Analyst with the Pearl Harbor Naval Shipyard, will testify to the certification process for applicants for the Production Resource Manager position.

19.  Glenn Gardner, will testify as to his recent selection to a senior management post at the Pearl Harbor Naval Shipyard. If Mr. Kawachi is allowed to testify, Mr. Gardner will testify on his role as a member of the selection panel for the Quality Assurance position.

20.  Deborah Seagal and/or another records custodian, yet to be identified, may be used testify to the maintenance of business records at the Pearl Harbor Naval Shipyard, the Navy Complaints Administration and Review Division and the Equal Employment Opportunity Commission in the event it is necessary.

21.  Steven Sasaki will testify on his recent selection to a senior management position at the Shipyard.

22.  Brian Yim will testify on his recent selection to a senior management position at the Shipyard.

23.  Any witnesses identified in prior pleadings submitted by Plaintiff and Defendant and any witnesses identified in Plaintiff's administrative EEO records.

(j)  <u>EXHIBITS, SCHEDULES AND SUMMARIES</u>

Defendant intends to submit exhibits related to Plaintiff's non-selection and data regarding the hiring history of the Shipyard.

(k)  <u>FURTHER DISCOVERY OR MOTIONS</u>

No further discovery is anticipated as the discovery cut-off has lapsed.  Defendant plans to file pretrial motions in limine.

(l)  <u>STIPULATION</u>

Stipulations are planned.

(m)  <u>AMENDMENTS, DISMISSALS</u>

No amendments are now planned.

(n)  <u>SETTLEMENT DISCUSSIONS</u>

The parties have participated in several settlement conferences with the Court.  It does not appear that further settlement conference will be fruitful.  However, Defendant is open to further settlement discussions.

(o)  <u>AGREED STATEMENT</u>

No agreed statement, except as to stipulated facts, is likely or necessary.

(p)  <u>BIFURCATION, SEPARATE TRIAL OF ISSUES</u>

No bifurcation or separate trial of issues appear necessary.

(q)  <u>REFERENCE TO A MASTER OR MAGISTRATE JUDGE</u>

N/A.

(r)  <u>APPOINTMENT OR LIMITATION OF EXPERTS</u>

Such appointment or limitation does not appear feasible or desirable.

(s)  <u>ESTIMATE OF TRIAL TIME</u>

Defendant anticipates the need for seven to nine trial days.

(t)  <u>CLAIMS OF PRIVILEGE OR WORK PRODUCT</u>

None anticipated at this time.

(u)  <u>EXHIBITS, SCHEDULES, SUMMARIES</u>

The parties will meet in the near future to discuss the exhibits that they intend to submit at trial.

//

//

//

//

//

//

//

(v)  <u>MISCELLANEOUS</u>

No other matters must be discussed at this time.

DATED:  August 26, 2008, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


/s/ Edric M. Ching


By _____
    THOMAS A. HELPER
    EDRIC M. CHING
    Assistant U.S. Attorneys

Attorneys for Defendant
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RONALD L. OBREY, JR., | ) | CIVIL NO. 02-00033 LEK |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| vs. | ) | |
| | ) | |
| GORDON R. ENGLAND, in his | ) | |
| capacity as the Secretary of | ) | |
| the Navy, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

    Served Electronically through CM/ECF:

    Clayton C. Ikei        CCIOffice@hawaii.rr.com

    Jerry P.S. Chang       ccioffice@hawaii.rr.com

    DATED:  August 26, 2008, at Honolulu, Hawaii.


    /s/ Jan Yoneda

    _____